UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| DEREK LEE MORRIS, ) | |
| ) | |
| Petitioner, ) | |
| ) | CAUSE NO. 3:13-CV-00235-PPS |
| vs. ) | |
| ) | |
| SUPERINTENDENT, ) | |
| ) | |
| Respondent. ) | |

# OPINION AND ORDER

Derek Lee Morris, a *pro se* prisoner, filed a petition under 28 U.S.C. § 2254 challenging his 2007 conviction in Marion County for felony child molestation. (Docket Entry 1.) The respondent argues that Morris's claims are procedurally defaulted or otherwise not cognizable on federal habeas review. (DE 10.) For the following reasons, the petition is denied.

## Background

In reviewing the petition, I must presume the facts set forth by the state courts are correct. 28 U.S.C. § 2254(e)(1). It is Morris's burden to rebut this presumption with clear and convincing evidence. *Id*. Here are the facts as stated by the Indiana Court of Appeals:

> In August 2005, Morris spent the night at his girlfriend's home. When his girlfriend left for work the following morning, Morris held her thirteen year-old daughter down by her arms and removed her clothing. He then placed his penis inside the daughter's vagina. After the victim told her mother what happened, Morris was charged with Class A felony child molesting.

*Morris v. State*, No. 49A02-0702-CR-172, slip op. at *2 (Ind. Ct. App. Feb. 11, 2008). Following a jury trial, Morris was found guilty. *Id.* He appealed, presenting two issues to the Indiana Court of Appeals: (1) the trial court improperly admitted certain hearsay testimony; and (2) the trial

court improperly instructed the jury. *Id.* The appellate court affirmed. *Id.* at *3-5. Morris did not seek transfer to the Indiana Supreme Court. (*See* DE 10-2.)

In 2008, Morris filed a petition for state post-conviction relief. *Morris v. State*, No. 49A04-1106-PC-379, slip op. at *3 (Ind. Ct. App. Apr. 27, 2012). Following a two-day evidentiary hearing, the petition was denied. *Id.* He appealed, asserting claims of ineffective assistance of trial and appellate counsel on various grounds, and errors in the post-conviction proceedings. *Id.* at *2. The appellate court found no merit to his claims. *Id.* The court also noted that Morris raised several free-standing claims pertaining to errors at trial, but the court found these claims waived under state law. *Id.* *2 n.1. Accordingly, the court affirmed the denial of post-conviction relief. *Id.* at *12. Morris sought transfer to the Indiana Supreme Court, asserting claims that the appellate court failed to adequately address his arguments; the trial court failed to make specific findings of fact on certain claims raised in the post-conviction proceedings; and both courts "significantly departed from accepted laws, Rules & Constitution." (DE 10-11.) The Indiana Supreme Court denied transfer. (DE 10-6 at 6-7.)

Thereafter, Morris filed a federal habeas petition raising six claims: (1) his trial counsel was ineffective on various grounds; (2) his appellate counsel was ineffective on various grounds; (3) the trial judge abused his discretion in various respects; (4) the Indiana Court of Appeals abused its discretion on post-conviction review; (5) the prosecutor committed misconduct; and (6) he is actually innocent of the offense. (DE 1 at 3-5.)

## Analysis

Morris's petition is governed by the provisions of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See Lindh v. Murphy*, 521 U.S. 320, 322, 336 (1997). AEDPA

allows a district court to issue a writ of habeas corpus on behalf of a person in custody pursuant to a state court judgment "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The court may grant an application for habeas relief only if it meets the stringent requirements of 28 U.S.C. § 2254(d), set forth as follows:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under this deferential standard, a federal habeas court must "attend closely" to the decisions of state courts "and give them full effect when their findings and judgments are consistent with federal law." *Williams v. Taylor*, 529 U.S. 362, 383 (2000). A state court decision is "contrary to" federal law if the state court applies a rule other than the one set out for the situation by the U.S. Supreme Court, or reaches a different result in a case involving facts materially indistinguishable from relevant U.S. Supreme Court precedent. *Bell v. Cone*, 535 U.S. 685, 694 (2002). A federal court may grant habeas relief under the "unreasonable application" clause "if the state court identifies the correct governing legal principle from [the U.S. Supreme Court's] decisions but unreasonably applies that principle to the facts of petitioner's case." *Wiggins v. Smith,* 539 U.S. 510, 520 (2003) (internal quotation marks and citation omitted). To warrant relief, a state court's decision must be more than incorrect or erroneous; it must be

"objectively unreasonable." *Id.* at 520-21 (internal quotation marks and citation omitted). In other words, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision. . . . [E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, —U.S.—, 131 S. Ct. 770, 786 (2011) (internal quotation marks and citation omitted).

For better or worse, the law of habeas corpus has become something of a labyrinth. Before considering the merits of a claim, district judges need to navigate the procedural maze and ensure that the petitioner has exhausted all available remedies in the state courts. 28 U.S.C. § 2254(b)(1)(A); *Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004). To begin with, interests of comity require that the state courts be given the first opportunity to address and correct violations of their prisoner's federal rights. *O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45 (1999). For that opportunity to be meaningful, the petitioner must fairly present his constitutional claims in one complete round of state review, including with the state court of last resort. *Baldwin v. Reese*, 541 U.S. 27, 30-31 (2004); *Boerckel*, 526 U.S. at 845.

The companion procedural default doctrine, also rooted in comity concerns, precludes a federal court from reaching the merits of a claim when: (1) the claim was presented to the state courts and was denied on the basis of an adequate and independent state law procedural ground; or (2) the claim was not presented to the state courts and it is clear those courts would now find the claim procedurally barred under state law. *Coleman v. Thompson*, 501 U.S. 722, 729-30, 735 and n.* (1991).

4

A habeas petitioner can overcome a procedural default by showing cause for failing to properly present his claims in state court and a resulting prejudice. *McQuiggin v. Perkins*, —U.S.—, 133 S. Ct. 1924, 1931-34 (2013); *Wainwright v. Sykes*, 433 U.S. 72, 87, 90-91 (1977). Cause sufficient to excuse a procedural default is defined as "some objective factor external to the defense" which prevented the petitioner from pursuing his constitutional claim in state court. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Factors inherent to a petitioner such as a petitioner's *pro se* status or lack of knowledge of the law do not establish cause to excuse a procedural default. *Smith v. McKee*, 598 F.3d 374, 385 (7th Cir. 2010); *Harris v. McAdory*, 334 F.3d 665, 669 (7th Cir. 2003).

Alternatively, a habeas petitioner can overcome a procedural default by establishing that the federal court's refusal to consider a defaulted claim would result in a fundamental miscarriage of justice. *House v. Bell*, 547 U.S. 518, 536 (2006). To meet this exception, the petitioner must establish that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 321 (1995). A petitioner who asserts actual innocence "must *demonstrate* innocence; the burden is his, not the state's." *Buie v. McAdory*, 341 F.3d 623, 626-27 (7th Cir. 2003) (emphasis in original). Furthermore, "'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). To support a claim of actual innocence the petitioner must come forward with "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial," *Schlup*, 513 U.S. at 324, and must demonstrate that "in light of new evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *House*, 547

U.S. at 537 (internal quotation marks and citation omitted). This is a difficult standard to meet, and such claims are "rarely successful." *Schlup*, 513 U.S. at 324.

Turning to the particulars of Morris's claims, the respondent argues that claims one, two, and five are procedurally defaulted because Morris failed to properly present them in one complete round of state review. (DE 10 at 6-8.) In the post-conviction proceedings, Morris raised seven issues in his petition to transfer to the Indiana Supreme Court, which he formulated as follows: (1) "Whether trial court failed to make specific finding of fact & conclusions of laws"; (2) "Whether trial court significantly departed from accepted Laws, Rules & Constitutions"; (3) "Whether trial court errored [*sic*] in its decision to deny Petition[er]'s P.C.R. & its issues"; (4) "Whether Appeals Court significantly departed from accepted Laws, Rules & Constitutions"; (5) "Whether Appeals Court addressed or considered all appellant's reply brief's issues"; (6) "Whether Appeals Court errored [*sic*] in its decision to deny Petitioner's Appeal"; (7) "Whether Appeals Court addressed or considered all appellant brief's issues." (DE 10-11 at 2.) Morris then listed those issues he claimed the post-conviction trial court and the appellate court should have addressed, citing to INDIANA POST-CONVICTION RULE 1.6 and two Indiana cases interpreting that rule. (*Id.* at 5.)

To properly exhaust, a petitioner must "present both the operative facts and the legal principles that control each claim to the state judiciary." *Stevens v. McBride*, 489 F.3d 883, 894 (7th Cir. 2007) (internal quotation marks and citation omitted). This includes alerting the state court to the "federal nature" of the claim. *Baldwin*, 541 U.S. at 29. Here, Morris does not satisfy either prong. As to the operative facts, he raised very general allegations that the lower courts had erred by overlooking some of his arguments. He did not present the operative facts raised

here regarding specific errors by trial counsel, specific errors by appellate counsel, or misconduct by the prosecutor. As to the operative legal principles, he did not cite to applicable constitutional law, and instead cited to a state procedural rule and two state cases interpreting that rule. (DE 10-11 at 5.)

Buried within his petition to transfer, Morris asserted that "state & counsel violated 14th Amend. by failure to correct T.E. & Ruth's false testimony." (DE 10-11 at 5.) It is doubtful that this fairly presented the legal basis for either a prosecutorial misconduct or ineffective assistance of counsel claim, but even if it did, Morris did not present any operative facts in support of this claim, including explaining how their testimony was false. He did refer generally to documents he filed with the lower courts, but the U.S. Supreme Court has expressly held that a habeas petitioner does not properly present a claim if the state court must look beyond his brief to find the claim, such as in a lower court opinion or other portions of the record. *Baldwin*, 541 U.S. at 31. Thus the claims raised here are procedurally defaulted.[1] *See, e.g.*, *Lewis*, 390 F.3d at 1026 (even though petitioner claimed in state proceedings that his attorney was ineffective in failing to challenge tainted identifications, he did not properly exhaust a free-standing claim based on the tainted identifications, since operative facts surrounding the two claims were distinct); *Stevens*, 489 F.3d at 894 (where petitioner complained about one aspect of counsel's performance in state proceeding but not the specific error he was challenging in federal habeas petition, claim was procedurally defaulted).

---

[1] I note additionally that Morris did not raise a prosecutorial misconduct claim at either the trial or appellate court levels in the post-conviction proceedings. *See Lewis*, 390 F.3d at 1025-26 (petitioner must present his claim "at each and every level in the state court system").

Accordingly, these claims cannot be considered on the merits, absent some basis for setting aside the default. Morris does not directly respond to the state's procedural default argument in his traverse. (*See* DE 11.) However, it appears he anticipated this problem when he filed his petition, because in claim six he argues that any procedural default that occurred should be excused because he is actually innocent. (DE 1 at 5.) Actual innocence is not cognizable as a freestanding claim on federal habeas review, but it can be used as "gateway" to review a procedurally defaulted claim. *Schlup*, 513 U.S. at 315; *Coleman v. Hardy*, 628 F.3d 314, 319 (7th Cir. 2010). As explained above, this is a difficult standard to meet, and it requires Morris to demonstrate that he is "factually innocent" of the offense, not just that his conviction is legally deficient in some way. *Bousley*, 523 U.S. at 623. He must support his claim of factual innocence with "new reliable evidence," and must show that "in light of new evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *House*, 547 U.S. at 537 (internal quotation marks and citation omitted).

Upon review, Morris does not satisfy this demanding standard. He does not provide a clear discussion of his actual innocence claim, but it appears to be based on an alibi defense he wanted counsel to pursue at trial. On post-conviction review, the Indiana Court of Appeals aptly explained why Morris's proposed alibi evidence was unconvincing:

> Morris now argues that the theory of defense should have been that Morris could not have stayed the night with T.E.'s mother and been present to attack T.E. on August 10, 2005, because he was with another woman all night. In Morris's view, this defense would have been ably established had counsel introduced Morris's cell phone records, his personal calendar, and appropriate witnesses.
>
> During her trial testimony, T.E. said that Morris had ceased having intercourse with her when his cell phone rang. Morris claims that his cell phone records would have shown that his phone rang at 11:00 a.m. as opposed to 7:00 to 8:00 a.m., when T.E.'s mother left for work. However, Morris's argument that the cell records would have

> impeached T.E.'s testimony is based upon his assumption that T.E. testified that the attack took place at a specified time.
>
> At the post-conviction hearing, trial counsel testified that he understood T.E. to be unclear on the exact time the cell phone rang. His assessment is supported by the record. T.E.'s testimony with regard to the timing of the offense was that she did not remember what time she awoke, but her older brother had left for his first day of school and her mother was at work. As such, Morris's cell phone records do not provide impeachment evidence.
>
> Morris also claims that his calendar, upon which he wrote the names of women with whom he had sexual encounters, was relevant alibi evidence ignored by trial counsel. Morris testified at trial that he remembered he was with C.R. because "I wrote it on my calendar, and I keep track of whoever that I'm having sex with." However, the calendar was not introduced into evidence. Trial counsel explained at the post-conviction hearing that he and Morris had agreed, "that calendar was not a good thing."

*Morris*, No. 49A04-1106-PC-379, slip op. at *6-7 (internal citations omitted). As the state court noted, a calendar Morris prepared himself has little persuasive value in proving his whereabouts, and records showing that he received a call on his cell phone in the late morning rather than early morning would not refute the victim's testimony that he molested her sometime that morning.[2]

Morris also relies on the testimony of Dennis Boyd, his "cousin and former roommate," in support of his alibi defense. Because Boyd is a family member of Morris's, his testimony is less persuasive than testimony from a third-party witness with no motive to lie. *House*, 547 U.S. at 552. But in all events, there was a significant problem with Boyd's testimony at the post-conviction hearing. Boyd testified that he saw Morris and C.R. at Boyd's apartment around 3:00 a.m. on August 10, 2005. Boyd claimed to have a specific recollection of the date because he had just returned to

---

[2] Morris argues that cell site records would have shown he was not at the victim's home at the time of this incident. However, he has not presented me with any actual records, and at this stage he must offer more than speculation; he must demonstrate his factual innocence. *Buie*, 341 F.3d at 626-27. In any event, other evidence in the record suggests that cell site records would not have been helpful. A public defender reviewing Morris's post-conviction petition noted that Morris and the victim lived only three blocks apart, and determined that the cell cite records could not delineate between two locations that close together. (*See* PCR Pet.'s Ex. 10.)

9

town after being in New Orleans doing cleanup work following Hurricane Katrina. *Morris*, No. 49A04-1106-PC-379, slip op. at *7. However, as the state court pointed out, the offense occurred *before* Hurricane Katrina, which hit New Orleans on August 29, 2005. *Id.* In short, Boyd's testimony does not prove Morris's actual innocence.

Morris also argues that he is actually innocent because, in his view, the victim gave conflicting and implausible testimony. As examples, he asserts that she gave differing accounts of where her brother was during the rape and also what she was wearing. This argument has no traction. It is apparent from the record that T.E. had two brothers, a younger brother who was upstairs asleep at the time of the rape, and an older brother who had already left for school. (DE 1-2 at 8; Trial Tr. at 17-18, 25.) As far as the clothing, it is apparent from T.E.'s pretrial deposition that she claimed there were two separate incidents—the rape and an incident a few days later (before she told anyone what happened) when Morris tried to grope her over her clothing. (DE 1-2 at 9, 16-17.)

Morris also points to "conflicting" testimony between the victim and her mother on various matters, including whether Morris ever brought groceries to the home and whether the victim's mother borrowed his van. To say the least, these are tangential issues, and in any event, are things a 13-year-old likely had no reason to know about or remember. I find nothing in the victim's testimony that was internally inconsistent or inherently implausible. To the extent there were any issues with the plausibility of the victim's account, the jurors had the opportunity to observe her firsthand and hear her testimony, and they found her credible. The jury also had the opportunity to observe Morris when he testified that he was elsewhere on the morning of August 10, 2005, and they did not believe him. In short, Morris has failed to establish his actual

innocence. He has not provided any other grounds for excusing his procedural default and therefore claims one, two, and five of ineffective assistance of counsel and prosecutorial misconduct cannot be considered on the merits.

In claim three, Morris alleges that the trial court erred in various respects, including mishandling jury issues and improperly sentencing him as a sexually violent predator. (DE 1 at 4; DE 1-1 at 28-29.) Morris did not raise any of these issues on direct appeal. (*See* DE 10-3.) He raised them on post-conviction review, but the Indiana Court of Appeals determined that they were waived under state law. *Morris*, No. 45A04-1106-PC-379, slip op. at *2 n.1. As noted above, a federal habeas court will not review a claim if it was resolved by the state court on an adequate and independent state procedural rule. *Sturgeon v. Chandler*, 552 F.3d 604, 611 (7th Cir. 2009). And a finding of waiver by the state court is an adequate and independent state procedural ground. *Id*. Accordingly, his claim of trial error is procedurally defaulted. For the reasons discussed above, Morris does not meet the actual innocence exception. He has not provided any other basis to set aside his default and, accordingly, this claim cannot be considered on the merits.[3]

Within claim three, Morris also asserts that the post-conviction court erred by failing to make specific findings on some of his claims, and determining that other claims were waived under state law. (DE 1 at 4; DE 1-1 at 29.) Relatedly, he asserts in claim four that the Indiana

---

[3] Although Morris does not expressly raise this argument, I have considered whether his claim of ineffective assistance of appellate counsel could be used to excuse the procedural default of his trial error claims. However, ineffective assistance of counsel must be presented to the state courts as an independent claim before it can be used to excuse a procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000). If the ineffective assistance claim was itself not properly raised in state court, the petitioner will be "fully defaulted." *Dellinger v. Bowen*, 301 F.3d 758, 766 (7th Cir. 2002). As outlined above, Morris raised a claim in the post-conviction proceedings based on ineffective assistance of appellate counsel, but he did not properly present this claim in his petition to transfer.

11

Court of Appeals erred on post-conviction review by failing to address some of his arguments.[4] (DE 1 at 4.) These arguments are unavailing. Federal habeas relief is not available for errors occurring in the state post-conviction proceedings, since such errors do not implicate the legality of the petitioner's underlying conviction. *See Pa. v. Finley*, 481 U.S. 551, 556-57 (1987); *Montgomery v. Meloy*, 90 F.3d 1200, 1206 (7th Cir. 1996).

Finally, in claim six Morris asserts that he is actually innocent of the offense. (DE 1 at 5.) However, actual innocence cannot be raised as a free-standing claim on federal habeas review. *Coleman*, 628 F.3d at 319.

For the foregoing reasons, the petition must be denied.

## Certificate of Appealability

As a final matter, I must consider whether to grant Morris a certificate of appealability. 28 U.S.C. § 2253(c); RULE 11 OF THE RULES GOVERNING SECTION 2254 CASES. To obtain a certificate of appealability, the petitioner "must make a substantial showing of the denial of a constitutional right . . . [by establishing] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks and citation omitted). When the petition is resolved on procedural grounds, the petitioner must establish two components: that reasonable jurists would find debatable both whether the district court was correct in its procedural ruling, and whether the petition states a valid claim for denial of a constitutional right. *Id.* Each is a threshold requirement that must be satisfied. *Id.* at 485.

---

[4] It appears Morris may be referring to the claims of trial error that were found to be waived. These claims were not overlooked; they simply were not addressed on the merits.

For the reasons fully explained above, Morris's claims are either procedurally defaulted or not cognizable in this proceeding. He has not provided any basis for concluding that jurists of reason would debate the outcome of the petition or find a reason to encourage him to proceed further. Accordingly, I decline to issue him a certificate of appealability.

**Conclusion**

For the reasons set forth above, the petition (DE 1) is **DENIED**. The petitioner is **DENIED** a certificate of appealability.

**SO ORDERED**.

ENTERED: April 2, 2014.

/s/ Philip P. Simon
**Philip P. Simon, Chief Judge**
**United States District Court**